[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 30, 2007
THOMAS K. KAHN
CLERK

No. 05-17039

D. C. Docket No. 04-00144 CV-CG-M

JAMES CROSBY,
JIMMIE GARDNER,
WILLIE L. (OMAR) SMITH,

Plaintiffs-Appellants,

versus

MOBILE COUNTY PERSONNEL BOARD,
JACK TILLMAN,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Alabama

**(January 30, 2007)**

Before DUBINA and WILSON, Circuit Judges, and HODGES,* District Judge.

PER CURIAM:

_____
*Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

Appellants, James Crosby ("Crosby"), Jimmie Gardner ("Gardner"), and Willie Smith ("Smith"), appeal the district court's order granting summary judgment to appellees, Mobile County Commission ("Commission"), Mobile County Personnel Board ("Personnel Board"), Sheriff Jack Tillman ("Sheriff Tillman"), and Captain Mark Barlow ("Captain Barlow"), on Crosby's retaliation claim, Smith's racial discrimination and retaliation claims, and Gardner's claim for retaliation and hostile work environment. Gardner also appeals the district court's order of final judgment entered on the jury's verdict as to his claim for discriminatory failure to promote. After a careful review of the record, and having the benefit of oral argument and the parties' briefs, we affirm the district court's final judgment entered on the jury's verdict as to Gardner's claim for discriminatory failure to promote, and we affirm the district court's order granting summary judgment to appellees on Smith's claims. However, we vacate the district court's order granting summary judgment to appellees on both Crosby and Gardner's claims of retaliation and Gardner's claim of hostile work environment and remand for further proceedings.

## I. BACKGROUND

*James Crosby*

Crosby began his employment in 1983 with the Mobile County Sheriff's Office as a deputy. Crosby attained promotions throughout the years and became a Captain in March 2000. He was initially the Captain over the Criminal Investigation Division ("CID"). After Sheriff Tillman restructured the department, he appointed Crosby as Captain over Field Operations. Crosby also served as interim Chief Deputy from October 2001 until March 2002, when Sheriff Tillman hired Captain Barlow as Chief Deputy. Crosby then reported directly to Captain Barlow.

In April 2003, Crosby received a subpoena to appear for a deposition in a civil case filed against Sheriff Tillman. At the deposition, Crosby stated that he feared retaliation from the Sheriff if he testified truthfully regarding the Sheriff's use of racial slurs and derogatory language in the workplace. In his complaint, Crosby claims that Sheriff Tillman did not speak to him for about a month after his deposition, and in May 2003, the Sheriff and Captain Barlow transferred him to the Support Services Division. After the transfer, Crosby states that he was no longer allowed to attend the Chief Deputy's meeting; he was told not to attend the weekly staff meetings; he managed less deputies in the new position than he had in his previous position; his office was smaller and had no windows; his subordinate officers did not approach him about possible promotions, but instead, approached

the Support Services Supervisor; his new position did not include a secretary; his unmarked sheriff's vehicle was replaced with a higher mileage, marked vehicle; and there was less overtime available in the new position. Crosby filed an EEOC charge against Sheriff Tillman in October 2003. He retired in August 2004, and a lieutenant assumed his duties.

In his deposition, Captain Barlow states that he recommended Crosby's transfer because he felt that Crosby did not communicate well with him and was resistant to changes Captain Barlow was trying to implement. Captain Barlow acknowledged Crosby's good work performance, but stated that he and Crosby had a communication problem which hindered their working relationship. According to Captain Barlow, the transfer made sense because the then-current Support Services Captain had requested a transfer to Field Services and Crosby had experience in the civil division, was considering retirement, and got along well with the Support Services Supervisor. Captain Barlow noted that he had no written documentation regarding his alleged communication difficulties with Crosby.

*Jimmie Gardner*

Gardner, an African-American, began working at the Metro Jail in 1990. During his employment, Gardner held numerous positions with the Patrol

4

Division, Civil Division, Roving Enforcement Against Criminal Threat Unit ("REACT"), the CID, and the Internal Affairs Department. Sheriff Tillman promoted Gardner to Corporal in 2000 and selected Gardner for Deputy of the Year for 2000-2001. In May 2001, Gardner was the recipient of an accommodation for outstanding service.

In the fall of 2003, CID Captain Bruce Lee ("Captain Lee") learned that Gardner had been tape recording conversations with his co-workers. Captain Lee prepared a memorandum requesting disciplinary action against Gardner. The Sheriff's Office investigated the request and suspended Gardner for taping conversations with fellow officers without their knowledge. A trial board held a pre-disciplinary hearing in October 2003 concerning the incident and found Gardner guilty of conduct unbecoming an employee in public service. The trial board recommended a 15 day suspension. Gardner appealed his suspension to the Mobile County Personnel Board, which upheld the trial board's findings, but modified Gardner's suspension from 15 days to 5 days.

After Gardner's suspension, his supervisor transferred him from CID to patrol. According to Captain Lee, he knew Gardner was unhappy at work and had discussed his job dissatisfaction with Lieutenant Battiste ("Lieutenant Battiste"), another African-American. Captain Lee concluded that the best thing for Gardner

5

would be to transfer him to Lieutenant Battiste's patrol division. Gardner's salary was unchanged. However, Gardner claims that he had less responsibility in patrol and less opportunity for overtime.

Gardner claims that other officers had secretly taped conversations with co-workers but were not disciplined for the taping. Gardner also alleges that after his discipline for taping, he was denied numerous promotions to the rank of Sergeant, although his name was on a Certificate of Eligibles sent to the Sheriff's Office. Several individuals who were promoted were ranked higher than Gardner on the list, but at least four individuals ranked lower than Gardner were promoted. Captain Lee stated that he recommended that Gardner not be promoted for at least one year following his discipline and suspension. To Gardner's knowledge, no person promoted to Sergeant had been suspended within the 12 months preceding their promotion. Gardner also claims that after his discipline for taping, he was treated differently when he requested light duty work due to a medical problem. He states that he was assigned to light duty during the night shift, although another employee had been assigned a day time shift for light duty work. Gardner was working the night shift at the time he requested light duty work.

Moreover, Gardner claims that while he was assigned to REACT, Sheriff Tillman referred to a black male citizen as "just another dumb-ass nigger." Also,

while assigned to CID, Gardner alleges that Sheriff Tillman told him that he'd "get you nigger later." Gardner attested that Sheriff Tillman allegedly told others that he had placed a confederate sticker on the back of a black man's car and the man rode around with the sticker on the car all day. Gardner claims that Sheriff Tillman laughed when he told about the sticker. Gardner also claims that his supervisor, Sergeant Mitch McCrae, used the word nigger in his presence.

Sheriff Tillman stated in his deposition that he did not use the word nigger in the workplace and did not refer to Gardner in a racially derogatory manner. Sheriff Tillman also denied placing the confederate sticker on a black man's car. Sheriff Tillman concurred with Captain Lee's recommendation that Gardner not be promoted within one year of his suspension. Sheriff Tillman was not aware of any other employee who had not been promoted within one year of a discipline or suspension.

*Complaint*

On March 5, 2004, plaintiffs filed a complaint pursuant to 42 U.S.C. §§ 1981 and 1983 and pursuant to Title VII of the Civil Rights Act ("Title VII"), alleging that there existed, and still exists, a custom or policy of discrimination against minorities working in the Mobile County Sheriff's Office and a custom or policy of retaliation against employees who complain in good faith about

7

discrimination or otherwise oppose unlawful employment practices within the Sheriff's Office. Crosby claims that Sheriff Tillman retaliated against him for testifying in a racial discrimination lawsuit filed by another Mobile County Sheriff's Office employee. Gardner claims that he suffered embarrassment, humiliation, mental distress, emotional pain and anguish as a result of a racially hostile work environment at the Sheriff's Office. Gardner also claims that the Sheriff retaliated against him for making several internal complaints to his supervisors regarding racially derogatory remarks and racial discrimination within the Sheriff's Office.

The defendants filed motions for summary judgment, which the district court granted in part and denied in part. The district court granted summary judgment to defendants on all of Crosby's claims, finding that Crosby did not demonstrate a *prima facie* case of retaliation and did not show that the defendants' proffered legitimate, non-discriminatory reasons for their actions were merely pretext. The district court also granted summary judgment to the defendants on Gardner's claims, finding that Gardner did not establish that a hostile work environment existed and did not rebut the defendants' proffered reasons on his retaliation claim. The district court denied summary judgment to the defendants on Gardner's failure to promote claim. The district court also granted summary

judgment to the defendants on Smith's retaliation and discrimination claims, finding that Smith neither established a *prima facie* case nor showed pretext.[1]

## II. STANDARD OF REVIEW

This court reviews *de novo* the district court's order granting summary judgment, "applying the same legal standards as the district court did and viewing all of the facts in the light most favorable to the non-moving party." *Cooper v. S. Co.*, 390 F.3d 695, 723 (11th Cir. 2004). A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (citation omitted).

## III. DISCUSSION

---

[1] Because we affirm the district court's order granting summary judgment to defendants on Smith's claims and affirm the district court's judgment entered on the jury's verdict on Gardner's failure to promote claim, we do not discuss these issues any further.

Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the alleged adverse action." *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). If the plaintiff establishes a prima facie case, the burden "shifts to the defendant to articulate a legitimate reason for the adverse action." *Id.* "If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual." *Id.*

The Supreme Court recently addressed the adverse employment action element of a Title VII retaliation claim in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. ___, 126 S. Ct. 2405 (2006). The Court held that "the scope of [Title VII's] anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and therefore "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at

10

2412-14. Thus, an employee need not show an adverse employment action (which was this circuit's pre-*Burlington Northern* retaliatory act standard), but rather, must show that "a reasonable employee would have found the challenged action materially adverse." *Id.* at 2415. In other words, the materially adverse employment action must discourage a reasonable employee from making or supporting a charge of discrimination. *Id.*

Applying the Supreme Court's new standard with regard to the Title VII anti-retaliation claims, we conclude from the record that there exist genuine issues of material fact concerning Crosby and Gardner's retaliation claims such that summary judgment is inappropriate. Accordingly, we vacate the district court's order granting summary judgment to appellees on these claims and remand to the district court for further proceedings consistent with this opinion. We also vacate the district court's order granting summary judgment to appellees on Gardner's hostile work environment claim because the evidence is sufficient that a jury could determine that the environment was so discriminatory, abusive, or hostile that it altered the terms and conditions of employment for Gardner. In all other respects, we affirm the district court's grant of summary judgment, and the judgment entered on the jury's verdict.

AFFIRMED in part, VACATED in part, and REMANDED.

11